| | | |
|---|---|---|
| PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY, | ) ) ) | **C.A. No. 1:17-CV-1155** |
| Plaintiff, | ) ) | **COMPLAINT** (declaratory judgment) |
| v. | ) ) | (non-jury) |
| VIKING PIZZA, INC. MARCUS ALFONSO KEARSE, JUWAN CHRISTOPHER HARRINGTON and YOLANDA IRVING, | ) ) ) ) | |
| Defendants. | ) ) ) ) | |

**COMES NOW** Pennsylvania National Mutual Casualty Insurance Company (hereinafter "Penn National"), Plaintiff in the above-styled action, and files this Complaint for Declaratory Judgment, showing this honorable Court as follows:

## INTRODUCTION

1.      This is an action for declaratory judgment, brought pursuant to Fed. R. Civ. P. 57 and 28 U.S.C §2201, to declare the rights and other legal relations surrounding questions of actual controversy that presently exist among Plaintiff Penn National; Viking Pizza, Inc. d/b/a Domino's Pizza ("Viking"); Marcus Alfonso Kearse ("Kearse"); Juwan Christopher Harrington ("Harrington") and Yolanda Irving, individually ("Irving"), arising out of an automobile accident that occurred on or about September 14, 2014.

## THE PARTIES

2.     Penn National is a multi-line insurance company organized and existing under the laws of the Common Wealth of Pennsylvania, with its principal place of business in Harrisburg, Pennsylvania and lawfully conducting business in North Carolina with an office in Greensboro, North Carolina.  Penn National submits itself to the jurisdiction of this Court.

3.     Upon information and belief, Defendant Viking is a corporation organized and existing under the laws of the State of North Carolina, with its president place of business located at 3677 New Bern Ave, Raleigh, North Carolina.  Viking may be served with process by delivering a copy of the summons and complaint to its registered agent for service of process, Steve Kuone, 305 Chastain Court, Jacksonville, North Carolina 28546.  Upon information and belief, Steve Kuone is the president of Viking.

4.     Upon information and belief, Defendant Kearse is a citizen and resident of Wake County, North Carolina.  Kearse may be served with process by delivering a copy of the summons and complaint to Kearse at his residence 6001 Quitman Trail, Raleigh, North Carolina, 27610.

5.     Upon information and belief, Defendant Harrington is a citizen and resident of Wake County, North Carolina.  Harrington may be served with process by delivering a copy of the summons and complaint to his residence at 1628-B Burgundy Street, Raleigh, North Carolina 27610.

6.     Upon information and belief, Defendant Irving is a citizen and resident of Wake County, North Carolina.  Irving may be served with process by delivering a copy of the summons and complaint to her residence at 1628-B Burgundy Street, Raleigh, North Carolina 27610.

<strong><u>JURISDICTION</u></strong>

7.    This Court has original jurisdiction over this action under 28 U.S.C §1332 in that it is a civil action between citizens of different states and the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

<strong><u>VENUE</u></strong>

8.    The venue of this action is properly predicated on 28 U.S.C §1391 and LCR 3.01 in that jurisdiction is founded on diversity of citizenship and this action is brought within a judicial district and division in which a substantial part of the events or omissions giving rise to the claim occurred, in which at least one Defendant resides or does business, and/or in which at least one Defendant is subject to personal jurisdiction.

<strong><u>STATEMENT OF FACTS</u></strong>

9.    Penn National issued a commercial general liability insurance contract to Viking, bearing contract number AU90695624 (the "Business Auto Insurance Contract"), for the contract period April 1, 2014 to April 1, 2015.  A true copy of the Business Auto Contract is appended hereto as Exhibit "A" and is incorporated herein by reference as if fully restated herein.

10-.    The Business Auto Contract contains a limit of liability of $500,000.00 for any one "accident" or "loss", as those terms are defined in the Commercial Auto Insurance Contract; subject to the terms, conditions, limitations, exclusions, definitions, and all other provisions of the Business Auto Insurance Contract, Exhibit "A", Form No. CA 00 01 0310.

11.    Penn National issued a commercial general liability insurance contract to Viking, bearing contract number UL90695621 (the "Commercial Umbrella Insurance Contract"), for the contract period April 1, 2014 to April 1, 2015.  A true copy of the Commercial Umbrella

Insurance Contract is appended herein as Exhibit "B" and is incorporated by reference as if fully restated herein.

12.     The Commercial Umbrella Insurance Contract contains a limit of liability of $1,000,000.00 for each "occurrence", as that term is defined in the Commercial Umbrella Insurance Contract; subject to the terms, conditions, limitations, exclusions, definitions, and all other provisions of the Commercial Umbrella Insurance Contract, Exhibit "B", Form No. 71 1184 0909.

13.     Upon information and belief, Viking was trading and doing business as Domino's Pizza, and is a duly organized and registered business corporation and existing under the laws of the state of North Carolina and maintaining a principle registered office and place of business at 305 Chastain Court, Jacksonville, NC 28546.  The public records of North Carolina Secretary of State identify Steven Kuone as President and Registered Agent for Viking Pizza, Inc.

14.     On November 30, 2016, Harrington and Irving filed a complaint against Viking and Kearse, *Juwan Christopher Harrington, a minor, by and through his Mother and Guardian Ad Litem, Yolanda Irving, Individually vs. Marcus Alfonso Kearse and Viking Pizza, Inc. d/b/a Domino's Pizza,* 16-CVS-24578, Wake County (hereinafter "The Underlying Action").  The Underlying Action alleges Harrington was injured while walking across North Raleigh Boulevard in a collision and resulting injuries were caused by Kearse's negligent operation of his 2009 automobile and that the negligence of Kearse should be imputed to Viking under the principles of agency and *respondeat superior*.  The Underlying Action sought compensation for the injuries sustained by Harrington including scarring, permanent injuries, physical and mental injuries, pain, suffering, discomfort and future medical treatment.  The Underlying Action sought compensation for losses suffered by Irving including loss of services of Harrington, past, present,

and future medical expenses.  A true copy of the Complaint in the Underlying Action is appended hereto as Exhibit "C" and is incorporated by reference as if fully restated herein.

15.     Upon information and belief, Defendant Viking d/b/a Domino's Pizza, on and prior to September 14, 2014, maintained an office and business location at 3677 New Bern Avenue, Raleigh, North Carolina.

16.     The Complaint in the Underlying Action alleges Kearse was an employee of Viking and was working out of its local place of business at 3677 New Bern Avenue, Raleigh, North Carolina.

17.     The Complaint in the Underlying Action alleges at the time Kearse was employed by Viking, his duties included work within the store location at 3677 New Bern Avenue, Raleigh, North Carolina and outside the store delivering pizza to Viking's customers by u se of his personal automobile.

18.     The Complaint in the Underlying Action alleges on the afternoon of Sunday September 14, 2014, Viking had assigned Kearse to make outside pizza deliveries in his personal automobile.

19.     The Complaint in the Underlying Action alleges while in the course and scope of his employment with Viking, at approximately 2:26pm Kearse was operating his 2009 Dodge automobile in the right hand northbound lane of North Raleigh Boulevard in Raleigh, North Carolina.

20.     The Complaint in the Underlying Action alleges, on information and belief, that while traveling north on North Raleigh Boulevard, Kearse collided with Harrington, who, along with two others, was walking from east to west across North Raleigh Boulevard.

21.     The Complaint in the Underlying Action alleges Harrington suffered injuries to his person as a consequence of the collision and has incurred medical bills subsequent to reaching the age of 18 years old.  Upon information and belief, Irving incurred medical expenses for the treatment of her son's injuries prior to his reaching the age of 18 years old.

22.     Upon information and belief, in November 2016, Viking by and through its President, Steven Kuone, sold the franchise for the Domino's located at 3677 New Bern Avenue, Raleigh, North Carolina to Wake Pizza, LLC which is managed by its manager Gale W. Ebert.

23.     Upon information and belief, on or about November 30, 2016, Plaintiff served Plaintiff's First Set of Interrogatories and Requests for Production of Documents to Kearse, said Interrogatories and Requests for Production of Documents to be served with the summons and complaint upon Kearse.

24.     Upon information and belief, on or about December 1, 2016, Viking was served with the summons and complaint in the Underlying Action.  Upon information and belief, Viking was simultaneously served with Plaintiff's First Set of Interrogatories and Requests for Production of Documents to Viking.

25.     Upon information and belief, on or about January 25, 2016, Viking was served a second time in the Underlying Action.  Upon information and belief, Viking was simultaneously served with Plaintiff's First Set of Interrogatories and Requests for Production of Documents to Viking.

26.     Upon information and belief, on or about March 15, 2015, subpoenas were issued to Steve Kuone and Shondra Kuone, President and Vice President of Viking, to appear for the depositions in the Underlying Action, said depositions to take place on April 11, 2017.

27.     On or about April 10, 2017, Steven Kuone, President of Viking, contacted Penn National by telephone and gave the first notice to Penn National of the motor vehicle accident and of the Underlying Action.  In this telephone call, Mr. Kuone advised Penn National that he had been subpoenaed in March 2017 and was to be deposed in the Underlying Action on April 11, 2017.

28.     On or about April 10, 2017, at 5:52pm, the Upton Group, LLC, the agency from whom Viking purchased the Business Auto Insurance Contract, sent an email providing written notice of the motor vehicle accident to Penn National, of the Underlying Action and of a deposition scheduled to begin at 11:00am on April 11, 2017.  The Notice of Loss stated (919) 545-4006 as the only telephone number for Viking.  A true copy of the Loss Notice is appended hereto as Exhibit "D" and is incorporated herein by reference as if fully restated herein.

29.     On April 11, 2017, Steven Kuone submitted to deposition taken by Ronald Dilthy, counsel for Harrington and Irving.

30.     On April 12, 2017, John Ermalinski of Penn National called the telephone number provided to Steven Kuone of Viking.  The voicemail box was full and Mr. Ermalinski was unable to leave a message.

31.     On May 3, 2017, Kearse submitted to an Examination Under Oath taken by Ronald Dilthy, counsel for Harrington.

32.     On or about April 12, 2017, John Ermalinski of Penn National sent an email to Steven Kuone, President of Viking, notice that he had called the telephone number provided as Kuone's, (919) 545-4006, that the voicemail box was full and that he was unable to leave a message, that he had determined that neither Penn National nor the Upton Group had record of the loss prior to April 10, 2017, and that he was preparing a Reservation of Rights letters to

Viking preserving Penn National's rights under the Business Auto Insurance Contract, due to the late report of the accident and possible prejudice to Penn National. The April 12, 2017 email requested that Viking contact Mr. Ermalinski, that Viking provide documents including any internal accident report or investigation, the employee manual in effect on September 14, 2014, any special rules for drivers not contained in the employee manual, information on Marcus Kearse's personal insurance, and any claim number, adjuster, and/or attorney contact information, any MVR pulled on Marcus Kearse before or after the accident, information on any report of the claim prior to April 10, 2017 and contact information for Marcus Kearse. A true copy of the April 12, 2017 email to Steven Kuone of Viking as it appears in Penn National's claim file is appended hereto within Exhibit "E" and is incorporated by reference as if fully restated herein.

33. On or about April 12, 2017, Penn National issued a Reservation of Rights letter to Viking, which reserved Penn National's rights under the Business Auto Insurance Contract, including but not limited to defenses to the duty to defend and/or indemnify Viking for damages related to the September 14, 2014 motor vehicle accident on the grounds that the motor vehicle accident and resulting claim by reason of Viking's late reporting of the motor vehicle accident and failure to cooperate in the investigation of the loss of belatedly having been given notice of the loss. The April 12, 2017 Reservation of Rights letter noted the claim had not been reported until over two and half years after the accident and over four months after Viking received the Complaint in the Underlying Action. The April 12, 2017 Reservation of Rights letter expressly reminded Viking of certain Business Auto Conditions including Duties in the Event of an Accident, Claim, Suit or Loss. The April 12, 2017 Reservation of Rights letter expressly reserved the all of Penn National's rights under any insurance policy issued by Penn National to

its insured Viking Pizza, Inc. and requested that Viking promptly call Claims Specialist John Ermalinski to discuss the claim. A true copy of the April 12, 2017 Reservation of Rights letter to Viking as it appears in Penn National's claim file is appended hereto as Exhibit "F" and is incorporated by reference as if fully restated herein.

34. On or about April 13, 2017, Penn National issued a Reservation of Rights letter to Kearse, which reserved Penn National's rights under the Business Auto Contract, including but not limited to, defenses to the duty to defend and/or indemnify Kearse for damages related to the September 14, 2014 motor vehicle accident on the grounds that the motor vehicle accident and resulting claim by reason of Kearse's late reporting of the motor vehicle accident and failure to cooperate in the investigation of the loss after belatedly having given notice of the loss. The April 13, 2017 Reservation of Rights letter noted the claim had not been reported until over two and half years after the accident and over four months after Kearse received the Complaint in the Underlying Action. The April 13, 2017 Reservation of Rights letter expressly reserved all of Penn National's rights under any insurance policy issued by Penn National to its insured Viking Pizza, Inc. and requested that Kearse promptly call Claims Specialist John Ermalinski to discuss the claim. A trust copy of the April 13, 2017 Reservation of Rights letter to Kearse as it appears in Penn National's claim file is appended hereto as Exhibit "G" and is incorporated by reference as if fully restated herein.

35. On April 13, 2017, Penn National sent a letter to Kearse noting that Penn National would investigate the claim under a Reservation of Rights and requested that Kearse contact John Ermalinski to discuss the accident and claim. A true copy of the April 13, 2017 letter to Kearse as it appears in Penn National's claim file is appended hereto as Exhibit "H" and is incorporated by reference as if fully restated herein.

36.     On or about April 13, 2017, Penn National sent a letter to Viking and to Kearse noting that Penn National would investigate the claim under a Reservation of Rights and asked that both Viking and Kearse contact John Ermalinski so he could obtain the details of the claim. A true copy of the April 13, 2017 letter to both Viking and Kearse as it appears in Penn National's claim file is appended hereto as Exhibit "I" and is incorporated by reference as if fully restated herein.

37.     On April 13, 2017, John Ermalinski of Penn National called the telephone number provided for Steven Kuone of Viking. The voicemail box was full and Mr. Ermalinski was unable to leave a message.

38.     On April 17, 2017, John Ermalinski of Penn National called the telephone number provided for Steven Kuone of Viking. The voicemail box was full and Mr. Ermalinski was unable to leave a message.

39.     On or about April 17, 2017, Penn Nationalforwarded to Steven Kuone of Viking, the April 12, 2017 email with a note saying "*I have attempted to contact you and have not been able to reach you in reference to this claim. Please call me to discuss this claim upon receipt of this email*". The April 17, 2017 email to Steven Kuone of Viking as it appears in Penn National's claim file is appended hereto as Exhibit "E" and is incorporated by reference as if fully restated herein.

40.     Penn National sent an email to Ronald Dilthy, counsel for Harrington and Irving, noting Viking and Kearse have not cooperated in Penn National's investigation. Penn National asked that Mr. Dilthy provide a narrative account of the injuries claimed and treatment to date, a list of medical expenses, prognosis, Harrington's date of birth, Social Security number, the names and contact information for witnesses, photographs of the scene, a narrative of the

accident from Harrington's perspective, and other material that would assist Penn National in its understanding of the claim. The email to Ronald Dilthy as it appears in Penn National's claim file is appended hereto as Exhibit "J" and is incorporated by reference as if fully restated herein.

41.     On April 18, 2017, John Ermalinski called Gwen Wilson of the Upton Group, LLC and asked if she had other means of reaching Steven Kuone. She said she would try reaching Steven Kuone as well.

42.     On April 18, 2017, Gwen Wilson of the Upton Group, LLC sent Steven Kuone of Viking an email advising that Penn National adjuster John Ermalinski was trying to reach him regarding the lawsuit discussed on April 10, 2017 and asking Mr. Kuone to contact John Ermalinski. A true copy of the April 18, 2017 email to Kuone as it appears in Penn National's claim file is appended hereto within Exhibit "K" and is incorporated by reference as if fully restated herein.

43.     On April 18, 2017, John Ermalinski called the number provided for Steven Kuone. The voicemail box was full and Mr. Ermalinski was unable to leave a message.

44.     On April 18, 2017 John Ermalinski of Penn National spoke to Gail Ebert who purchased the Domino's franchise from Viking Pizza and who advised that she did not have contact information for Steven Kuone.

45.     On April 19, 2017, Penn National sent a letter to Viking noting that Penn National would investigate the claim under a Reservation of Rights and requested that Viking contact John Ermalinski to discuss the accident and claim. A true copy of the April 19, 2017 letter to Viking as it appears in Penn National's claim file is appended hereto as Exhibit "L" and is incorporated by reference as if fully restated herein.

46.     On April 19, 2017, John Ermalinski of Penn National called the number provided for Marcus Kearse (919) 709-9049. The voicemail box was not set up and Mr. Ermalinski was unable to leave a message.

47.     On or about April 20, 2017, John Ermalinski of Penn National spoke with Ronald Dilthy, counsel for Harrington and Irving and learned that Viking had been served with the Summons and Complaint in December 2016 and against in January 2017. Mr. Ermalinski learned that Viking had bought the franchisee for four Domino's locations and has sold them all. Mr. Ermalinski learned that Steven Kuone was now unemployed and in financial distress. Mr. Ermalinski learned that Shondra Kuone, wife of Steven Kuone, was employed as a dental technician. Mr. Ermalinski learned that Steven and Shondra were separated. Mr. Ermalinski learned that Harrington had a fractured hip, leg and arm and a closed head injury. He learned that Harrington had surgical repair of his fractures and had medical expenses in excess of $100,000.00.

48.     On April 24, 2017, Penn National sent a letter to Viking noting that Penn National would investigate the claim under a Reservation of Rights and requested that Viking contact John Ermalinski to discuss the accident and claim. A true copy of the April 24, 2017 to Viking as it appears in Penn National's claim file is appended hereto as Exhibit "M" and is incorporated by reference as if fully restated herein.

49.     On April 30, 2017, John Ermalinski of Penn National called the telephone number provided for Steven Kuone of Viking and left a message asking that Mr. Kuone return the call to discuss the claim.

50.     On or about May 3, 2017, Ronald C. Dilthy, counsel for Harrington and Irving sent a letter to Penn National noting that suit had been filed November 30, 2017, that Kearse

filed an Answer on January 3, 2017, that Plaintiff filed a Reply alleging last clear chance on February 2, 2017, that Viking was served December 1, 2016 and again on January 25, 2017. The May 3, 2017 letter from Dilthy enclosed a brief description of Harrington and Irving, the location and the accident. The May 3, 2017 letter from Dilthy also enclosed a brief summary of medical records from WakeMed and a summary of the total medical expenses.

51.     On June 2, 2017, Omega Poteat of Penn National called the number provided to Steven Kuone, (919) 545-4006, and left a detailed message requested he return the call to discuss the claim.

52.     On June 2, 2017, Penn National sent a letter to Viking requesting production of documents including a copy of Viking's employee manual in effect September 14, 2014, any specific rules for drivers not contained in the employee manual, and any MVR pulled on driver Marcus Kearse before or after the accident. The June 2, 2017 letter to Viking also requested that Viking contact Omega Poteat to discuss the claim. A true copy of the June 2, 2017 letter to Viking requesting documents as it appears in Penn National's claim file is appended hereto as Exhibit "N" and is incorporated by reference as if fully restated herein.

53.     On June 2, 2017 at 3:36pm, Omega Poteat sent Steven Kuone, representative of Viking, an email noting that the claim had been reassigned to her, and the had not contacted John Ermalinski as requested. The June 2, 2017 email expressly requested that Mr. Kuone contact her. The June 2, 2017 email is appended hereto as Exhibit "O" and is incorporated by reference as if fully restated herein.

54.     On or about June 13, 2017, Penn National issued a Reservation of Rights letter to Viking, which reserved Penn National's rights under the Insurance Contract, including but not limited to, defenses to the duty to defend and/or indemnify Viking for damages related to the

Fire on the grounds of the motor vehicle accident and resulting Claim by reason of Viking's late reporting of the motor vehicle accident and failure to cooperate in the investigation of the loss after belatedly having given notice of the loss. The June 13, 2017 Reservation of Rights letter noted previous written requests dated April 12, 2017 and June 5, 2017, the April 12, 2017 Reservation of Rights letter noted numerous attempts to reach Viking by telephone. The June 5, 2017 Reservation of Rights letter expressly reminded Viking of the certain Business Auto Conditions including Duties in the Event of an Accident, Claim, Suit or Loss. The June 13, 2017 Reservation of Rights letter expressly reserved all of Penn National's rights under any insurance policy issued by Penn National to its insured Viking Pizza, Inc. and requested that Viking promptly call Senior Claims Representatives Omega Poteat to discuss the claim. A true copy of the June 13, 2017 Reservation of Rights letter to Viking as it appears in Penn National's claim file is appended hereto as Exhibit "P" and is incorporated by reference as if fully restated herein.

## REQUEST FOR DECLARATORY JUDGMENT
**Viking and Kearse failed to comply with their duties in event of Accident, Claim, Suit or Loss**

55.     Penn National restates that preceding and following allegations of this Complaint for Declaratory Judgment as if fully set forth herein.

56.     The Business Auto Insurance Contract provides Penn National will pay all sums any "insured" legally must pay as damages because of "bodily injury"…to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance, or use of covered "auto".

(Exhibit "A"- Business Auto Insurance Contract, Form CA 00 01 0310, pg. 2 of 13)

57.     The Commercial Umbrella Insurance Contract provides Penn National will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limited" because of

"bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such "bodily injury" or "property damage" when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted.

(Exhibit "B"- Commercial Umbrella Liability Insurance Contract, Form 71 84 0909, pg. 1 of 23).

58.     The Business Auto Insurance Contract lists those who are "insured". "Insureds" including "You for any covered auto" and "Your employee" if the covered "auto" is owned by the "employee" or a member of his or her household. (Exhibit "A"- Business Auto Insurance Contact, Form 71 11 84 1105, pg. 20 of 23).

59.     The Commercial Umbrella Liability Contract describes who is an insured as follows:

2.     Only with respect to liability rising out of the ownership, maintenance or use of "covered autos":

    a.     You are an insured;

    b.     Anyone else while using with your permission a "covered auto"

    c.     You owned hire or borrow is also an insured; except

    …

    (2)     Your "employee" if the "covered auto" is owned by that "employee" or a member or his or her household.

(Exhibit "B"- Commercial Umbrella Liability Insurance Contract, Form 71 1184 0909, pg. 15 of 23).

60.    The Declarations of the Business Auto Insurance Contract provides that the Business Auto Insurance Contract provides liability coverage for covered auto designation symbols 8, 9 and 19.  Declarations Form 70-2487 (Rev. 07/13).

61.    The Business Auto Insurance Contract describes the covered auto designation symbols as follows: 8- Hired "Autos" Only; 9-Non- Owned "Autos" Only; and 19- Mobile Equipment Subject to Compulsory or Financial Responsibility or Other Motor Vehicle Insurance Law Only.  (Exhibit "A"- Business Auto Insurance Contract, Form CA 00 01 0310, pg. 1-2 of 13).

62.    The Business Auto Insurance Contract describes 9-Non-Owned "Autos" Only as follows: "Only those "autos" you do not own, lease, or hire, rent or borrow, that are used in connection with your business.  This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households but only while used in your business or your personal affairs". (Exhibit "A"- Business Auto Insurance Contract, Form CA 00 01 0310, pg. 1 of 13).

63.    The Commercial Umbrella Liability Contract defines "Covered Auto" to mean "Only those "autos" to which " underlying insurance" applies".  (Exhibit "B"- Umbrella Insurance Contract, Form 71 11 84 0909, pg. 19 of 23).

64.    The Business Auto Insurance Contract defines "Accident" to includes "continuous or repeated exposure to the same conditions as resulting in "bodily injury" or "property damage".  (Exhibit "A"- Business Auto Insurance Contract, Form CA 00 01 0310, pg. 10 of 13).

65.    The Business Auto Insurance Contract defines "Auto" to mean "A land motor vehicle, trailer, semitrailer designed for travel on public roads; or any other land vehicle that is

subject to compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged". However "auto" does not include "mobile equipment". (Exhibit "A"- Business Auto Insurance Contract, Form CA 00 01 0310, pg. 10-11 of 13).

66.     The Commercial Umbrella Liability Insurance Contract defines "Auto" to mean " A land motor vehicle, trailer or semitrailer designed for travel on public roads including any attached machinery or equipment; or any other land vehicle that is subject to compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged". (Exhibit "B"- Commercial Umbrella Liability Insurance Contract, Form 71 1184 0909, pg. 19 of 23).

67.     The Business Auto Insurance Contract defines "bodily injury" to mean "bodily injury, sickness or disease sustained by a person including mental anguish, mental injury or death resulting from any of these". (Exhibit "A"- Business Auto Insurance Contract, 71 0679 0713, pg. 3 of 13).

68.     The Commercial Umbrella Liability Insurance Contract defines "bodily injury" to mean "bodily injury, disability, sickness or disease sustained by a person including death resulting from "bodily injury". (Exhibit "B"- Commercial Umbrella Liability Insurance Contract, Form 71 1184 0909, pg. 19 of 23).

69.     The Commercial Umbrella Liability Insurance Contract defines "underlying insurance" to mean "any policies of insurance listed in the Declarations under the schedule "underlying insurance". (Exhibit "B"- Commercial Umbrella Liability Insurance Contract, Form 71 1184 0909, pg. 22 of 23).

70.     The Business Auto Insurance Contract Loss Condition provides, in part:

2.      Duties in the Event of an Accident, Claim, Suit or Loss.

We have no duty to provide cove rage under this policy unless there has been full compliance with the following duties:

    a.    In the event of an "accident", claim", "suit" or "loss", you must five use or our authorized representative prompt notice of the "accident" or "loss".

    Include:

    (1)    How, when and where the "accident" or "loss" occurred;

    (2)    The insureds name and address; and

    (3)    To the extent possible, the names and addresses of any injured persons and witnesses.

    b.    Additionally, you and any other involved "insured" must:

    …

    (2)    Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the "claim" or "suit"

    (3)    Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

71.    The Commercial Umbrella Liability Insurance Contract Loss Conditions provides in part:

    2.    Duties in the Event of Accident, Claim, Suit or Loss.

    a.    You must see to it that we are notified as soon as practicable of any "occurrence" or an offense regardless of the amount which may result in a claim. To the extent possible, notice should include:

    (1)    How, when and where the "occurrence" of the offense took place;

(2)     The names and addresses of any injured persons and witnesses; and

(3)     The nature and location of any injury or damage arising out of the "occurrence" or offense.

b.     If claim is made or "suit" is brought against any insured, you must:

(1)     Immediately record the specifics of the claim or "suit" and the date received; and

(2)     Notify us as soon as practicable.  You must see to it that we received written notice of the claim or suit as soon as practicable.

(c)     You and any other involved insured, must:

(1)     Immediately send us copies of any demands, notices, summons or legal paper received concerning the claim or "suit".

(2)     Authorize us to obtain records and other information.

(3)     Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

(Exhibit "B"- Commercial Umbrella Liability Insurance Contract, Form 71 1184 0909, pg. 17 of 23).

72.     The Business Auto Insurance Contract defines "Suit" to mean: (1) "A Civil proceeding in which damages because of "bodily injury" or "property damage"; (2) "A covered pollution cost of expense to which such damages or covered pollution costs or expenses are claimed and to which the "insured' must submit or does submit with our consent"; or (3) "Any other alternative dispute resolution proceeding in which such damages or "covered pollution

costs or expenses" are claimed and to which the insured submits with our consent". (Exhibit "A"- Business Auto Insurance Contract, Form CA 00 01 0310, pg. 13 of 13).

73.     Viking and Kearse failed to provide to Penn National or its authorized representative prompt notice of the September 14, 2014 motor vehicle accident.

74.     Viking and Kearse failed to immediately send Penn National copies of the summons and legal papers in the Underlying Action.

75.     Viking and Kearse wholly failed to give Penn National or its authorized representative any notice of the September 14, 2014 motor vehicle accident or of the Underlying Action until April 10, 2017, nearly thirty (3)) months after the September 14, 2014 motor vehicle accident and One Hundred Thirty –Two (132) days after filing of the Summons and Complaint. Upon information and belief, Viking first provided copies of the summons and legal papers One Hundred Thirty-Two (132) days after service of the summons and complaint.

76.     Penn National made numerous and repeated efforts to communicate with Viking and secure the cooperation of Viking in the investigation of the Underlying Action.

77.     Viking has wholly failed to cooperate with Penn National in the investigation of the Underlying Action.

78.     Penn National made numerous and repeated efforts to communicate with Kearse and secure the cooperation of Kearse in the investigation of the Underlying Action.

79.     Kearse wholly failed to cooperate with Penn National in the investigation of the Underlying Action.

80.     Penn National has been prejudiced in its investigation of the Underlying Action by Viking's and Kearse's failure to comply with their duties in Event of Accident, Claim, Suit or Loss.

81.     Penn National has been prejudiced in its investigation and handling of the suit in that:

a.      it was not given reasonable opportunity to prepare Steven Kuone for his deposition;

b.      it was not given reasonable opportunity to participate in the deposition of Steven Kuone;

c.      it was not given reasonable opportunity to prepare Kearse for his examination under oath;

d.      it was not given reasonable opportunity to participate in the examination under oath of Kearse;

e.      it was not given reasonable opportunity to inspect the business records of Viking including the personal files and records of Kearse;

f.      it was not given the opportunity to investigate the occurrence of the accident;

g.      it was not given opportunity to obtain records demonstrating whether or not Kearse was employed by Viking on the day of the accident and whether Kearse was acting within the course and scope of any employment with Viking at the time of the accident.

82.     A controversy of a justiciable nature presently exists among the parties, which demands declarations by the Court, so that Penn National may have its rights and duties under the Insurance Contract determined and avoid the possible accrual of damages.

83.     Accordingly, Penn National seeks a declaration from this Court that Penn National has no duty to indemnify Viking, Kearse, or anyone else, for any; liability for damages, related to the Underlying Action on the grounds that Viking and Kearse failed to notify Penn National of the accident, failed to notify Penn National of the claim, failed to notify Penn National of the suit and failed to cooperate with Penn National in the investigation and defense of the Underlying Action.

**WHEREFORE,** Plaintiff Penn National respectfully prays that this Court enter an Order ADJUDGING, ORDERING and DECREEING that:

1.     Penn National had no duty to indemnify Viking and/or Kearse for any damages awarded to Harrington and/or Irving in the Underlying Action;

2.     Penn National has no duty to pay any amount whatsoever to Harrington and/or Irving, nor to anyone else whomsoever for damages arising out of the September 4, 2014 motor vehicle accident, the Claim or the Underlying Action; and

3.     For such other and further relief as the Court may deem just and proper, including the Plaintiff's costs in this action.

Dated: 12/28/2017

/s/ John R. Fonda
John R. Fonda
jfonda@midkifflaw.com
Midkiff, Muncie & Ross, P.C.
203 S. Stratford Road
Suite G
Winston-Salem N.C. 27103
T: (336) 448-5534
F: (336) 602-1409
***Attorneys for Plaintiff Pennsylvania National Mutual Casualty Insurance Company***